## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| WM INDUSTRIES CORP. | § | |
| (f/k/a WM GREENTECH | § | |
| AUTOMOTIVE CORP.), | § | |
| GREENTECH AUTOMOTIVE | § | |
| CORP., GREENTECH | § | |
| AUTOMOTIVE, INC., | § | |
| | § | No. 2:17-cv-13668 |
| *Plaintiffs,* | § | |
| | § | The Hon. Mark A. Goldsmith, |
| v. | § | United States District Judge |
| | § | |
| PLASTECH HOLDING CORP., | § | The Hon. R. Steven Whalen, |
| SUSMAN GODFREY, LLP, | § | United States Magistrate Judge |
| | § | |
| *Defendants.* | § | |

## PLASTECH HOLDING CORP.'S MOTION TO DISMISS
## AND, IN THE ALTERNATIVE,
## PLASTECH HOLDING CORP.'S MOTION TO STAY THE CASE

PLEASE TAKE NOTICE that, by its counsel below, Defendant Plastech Holding Corporation ("Plastech") respectfully moves this Court for an Order dismissing all of Plaintiffs' against Plastech.  In the alternative, Plastech moves the Court for an order staying this case pending resolution of the appeal in the underlying case, *Plastech Holding Corp. v. WM GreenTech Automotive Corp.*, No. 2:14-cv-14049 (E.D. Mich. 2017), *appeal docketed*, No. 17-2122 (6th Cir. Sept. 14, 2017).

1

Pursuant to Local Rule 7.1(a), Matthew S. Hellman emailed Plaintiffs' counsel on February 13, 2018, to explain the nature of relief sought by this motion. Plaintiffs' counsel has confirmed that they oppose the motion and the relief sought and will not concur in either the motion to dismiss or in the motion to stay the case.

I, Matthew S. Hellman, certify that this document complies with Local Rule 5.1(a) because it contains: double-spaced text (except for quoted materials, footnotes, and this certification); at least one-inch margins on the top, sides and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length.

Filed: February 20, 2018                Respectfully submitted,

*/s/ Brian M. Schwartz*                 */s/ Matthew S. Hellman*
Brian M. Schwartz                       Matthew S. Hellman

Brian M. Schwartz (P69018)              Matthew S. Hellman (DC 484132)
MILLER, CANFIELD, PADDOCK                JENNER & BLOCK LLP
   AND STONE, PLC                       1099 New York Ave., NW
150 W. Jefferson Ave., #2500            Washington, DC 20001
Detroit, MI 48226                       202-639-6000
313-963-6420                            mhellman@jenner.com
schwartzb@millercanfield.com

                                        *Counsel for Defendant*
                                        *Plastech Holding Corp. Only*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| WM INDUSTRIES CORP. | § | |
| (f/k/a WM GREENTECH | § | |
| AUTOMOTIVE CORP.), | § | |
| GREENTECH AUTOMOTIVE | § | |
| CORP., GREENTECH | § | |
| AUTOMOTIVE, INC., | § | |
| | § | No. 2:17-cv-13668 |
| *Plaintiffs,* | § | |
| | § | The Hon. Mark A. Goldsmith, |
| v. | § | United States District Judge |
| | § | |
| PLASTECH HOLDING CORP., | § | The Hon. R. Steven Whalen, |
| SUSMAN GODFREY, LLP, | § | United States Magistrate Judge |
| | § | |
| *Defendants.* | § | |

**PLASTECH HOLDING CORP.'S BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS AND, IN THE ALTERNATIVE,**
**IN SUPPORT OF ITS MOTION TO STAY THE CASE**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED............................................................... iii

KEY AUTHORITIES ...................................................................................iv

INDEX OF AUTHORITIES..................................................................................v

BACKGROUND .........................................................................................1

    A.    Plastech's Complaint in the Underlying Case.......................................2

    B.    Plastech Mistakenly Attaches an Inauthentic Copy of the Framework Agreement to its Filings in the Underlying Case. .............2

    C.    GreenTech's Counterclaim in the Underlying Case. ............................3

    D.    GreenTech Seeks and Obtains Sanctions in the Underlying Case. ...................................................................................6

    E.    GreenTech Files A New Lawsuit Based on the Underlying Case. ...................................................................................7

SUMMARY OF ARGUMENT .........................................................................7

ARGUMENT AND AUTHORITIES....................................................................9

I.      All of GreenTech's Claims Against Plastech in This Case Are Barred By the Rule Against Claim-Splitting.................................................9

II.     GreenTech's Claims Are Also Barred Because GreenTech Sought and Received Sanctions for Plastech's "Fraud" in the Underlying Case.............17

III.    In the Alternative, This Court Should Stay This Case Pending the Resolution of the Appeal in the Underlying Case.......................................20

CONCLUSION .........................................................................................22

ii

## <u>STATEMENT OF ISSUES PRESENTED</u>

1) Whether all of GreenTech's claims against Plastech should be dismissed because they are barred by the rule against claim-splitting.

   **Plastech's Answer:  Yes.**

   **GreenTech's Likely Answer:  No.**

2) Whether all of GreenTech's claims should be dismissed because GreenTech already sought and received a remedy for Plastech's purported fraud during proceedings in a prior case that was based on the same facts at issue here.

   **Plastech's Answer:  Yes.**

   **GreenTech's Likely Answer:  No.**

3) Whether, as an alternative to granting Plastech's motion to dismiss, it would be appropriate for this Court to stay this case pending the Sixth Circuit's forthcoming decision in the appeal of the underlying case.

   **Plastech's Answer:  Yes.**

   **GreenTech's Likely Answer:  No.**

# KEY AUTHORITIES

**Michigan Supreme Court Cases**

*A. Krolik & Co. v. Ossowski*,

      213 Mich. 1, 180 N.W. 499 (1920)

*Gose v. Monroe Auto Equipment Co.*,

      409 Mich. 147, 294 N.W.2d 165 (1980)

*Washington v. Sinai Hospital of Greater Detroit*,

      478 Mich. 412, 733 N.W.2d 755 (2007)


**Sixth Circuit Cases**

*Ellis v. Gallatin Steel Co.*,
      390 F.3d 461 (6th Cir. 2004)

*F.T.C. v. E.M.A. Nationwide, Inc.*,
      767 F.3d 611 (6th Cir. 2014)

*Sanders Confectionery Products, Inc. v. Heller Financial Inc.*,
      973 F.2d 474 (6th Cir. 1992)

*Sanders v. First National Bank & Trust Co. in Great Bend*,
      936 F.2d 273 (6th Cir. 1991)

*Wilkins v. Jakeway*,
      183 F.3d 528 (6th Cir. 1999)

# INDEX OF AUTHORITIES

**FEDERAL CASES**

*Board of Trustees of Sheet Metal Workers' Local Union No. 80 Insurance Trust Fund v. Blue Cross & Blue Shield of Michigan*, No. 2:13-CV-10415, 2013 WL 4052740 (E.D. Mich. Aug. 12, 2013) ....................21

*Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004) ..........................................9

*Finjan, Inc. v. Blue Coat Systems, LLC*, 230 F. Supp. 3d 1097 (N.D. Cal. 2017) ................................................................. 17

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ..............................21

*Hutcherson v. Lauderdale County*, 326 F.3d 747 (6th Cir. 2003)..........................11

*Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011) ....................................................16

*Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790 (6th Cir. 2003) ........................................................................18

*Nalco Co. v. Chen*, 843 F.3d 670 (7th Cir. 2016)....................................................12

*Perry v. Alexander*, No. 2:15-CV-00310, 2017 WL 3084387 (D. Me. July 19, 2017)............................................................................12

*Prewett v. Weems*, 749 F.3d 454 (6th Cir. 2014)....................................................11

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474 (6th Cir. 1992) ................................................................11

*Sanders v. First National Bank & Trust Co. in Great Bend*, 936 F.2d 273 (6th Cir. 1991)................................................................15

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)..........................................................................10

*Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052 (S.D. Cal. 2007) ................................................................17

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL 1163741 (N.D. Ill. Mar. 29, 2017)........................................................12

*Westerman v. Sears, Roebuck & Co.*, 577 F.2d 873 (5th Cir. 1978) ...................... 18

*Wilkins v. Jakeway*, 183 F.3d 528 (6th Cir. 1999) ...................................... 11, 14, 16

*Williams v. Rapelje*, No. 10-10246, 2010 WL 455395 (E.D. Mich. Feb. 3, 2010) ............................................................................................ 21-22

## MICHIGAN CASES

*A. Krolik & Co. v. Ossowski*, 213 Mich. 1, 180 N.W. 499 (1920) ........................... 9

*Engle v. Livonia Firefighters Union, Local 1164*, No. 244334, 2004 WL 817150 (Mich. Ct. App. Apr. 15, 2004) ...................................................... 10

*Gose v. Monroe Auto Equipment Co.*, 409 Mich. 147, 294 N.W.2d 165 (1980) .......................................................................................................... 10

*Rauch v. Sinai Hospital*, No. 218576, 2001 WL 684566 (Mich. Ct. App. June 15, 2001) ....................................................................................... 10

*Rowry v. University of Michigan*, 441 Mich. 1, 490 N.W.2d 305 (1992) ................................................................................................................ 10

*Schwartz v. City of Flint*, 187 Mich. App. 191, 466 N.W.2d 357 (1991) ................................................................................................................ 12

*State Farm Fire & Casualty Co. v. Schotts*, No. 208145, 1999 WL 33329399 (Mich. Ct. App. Dec. 3, 1999) ............................................................ 10

*Washington v. Sinai Hospital of Greater Detroit*, 478 Mich. 412, 733 N.W.2d 755 (2007) ............................................................................. 11-12, 14

## OTHER AUTHORITIES

28A C.J.S. *Election of Remedies*, Westlaw (database updated Feb. 2018) ....................................................................................................... 18, 19

50 C.J.S. *Judgments*, Westlaw (database updated Feb. 2018) ................................. 14

4 *Cyclopedia of Federal Procedure*, Westlaw (3d ed. database updated Feb. 2018) ........................................................................................... 16

Fed. R. Civ. P. 13 ................................................................................................ 4, 15

Fed. R. Civ. P. 15 ....................................................................................4

18 James Wm. Moore et al., *Moore's Federal Practice* § 133.51 (3d ed.
    2017) .............................................................................................11

*Restatement (Second) of Judgments* (1982).......................................9, 14

## BACKGROUND

This case arises out of a previous lawsuit that this Court adjudicated last year, *Plastech Holding Corp. v. WM GreenTech Automotive Corp.*, No. 2:14-cv-14049 (judgment issued Aug. 15, 2017) (the "Underlying Case").[1]  In the Underlying Case, this Court dismissed Plastech's claims against GreenTech and JAC Motors ("JAC") after finding that Plastech had attached an inauthentic contract to some of its pleadings in bad faith.  In that same action, GreenTech sought to file a counterclaim alleging that Plastech's invocation of the inauthentic contract constituted tortious interference with GreenTech's relationship with JAC.  This Court denied leave to file the counterclaim because it found that GreenTech had waited too long to sue (nearly two years) after it became aware of the basis of its counterclaim.

Rather than appeal this Court's ruling denying leave to file its counterclaim, GreenTech has now filed a <u>new</u> action against Plastech that once again alleges that GreenTech was injured by Plastech's invocation of the inauthentic contract.  Among other defects, these new claims are flatly barred by the rule against claim-splitting. GreenTech cannot make an end-run around this Court's counterclaim ruling by spreading across two actions its claims concerning the contract.  Instead, basic principles of finality and fairness dictate that these follow-on claims be dismissed,

---

[1] The defendants in the Underlying Case—WM GreenTech Automotive Corp., GreenTech Automotive Corp., and GreenTech Automotive, Inc.—are the plaintiffs in the instant action.  Plastech will refer to them together as "GreenTech."

1

just as they would have been had they been brought in the Underlying Case. Alternatively, this action should be stayed pending the Sixth Circuit's resolution of Plastech's appeal from the sanctions order dismissing its claims against GreenTech.

### A. Plastech's Complaint in the Underlying Case.

In the Underlying Case, Plastech alleged that a contract known as the "Framework Agreement," which was signed in 2010 by Plastech and JAC, included an exclusivity provision providing that Plastech would be the exclusive American distributor of cars manufactured by JAC.  UC Dkt.[2] 113, ¶¶ 29-30.  Plastech also alleged that, despite knowledge of this contract and its exclusivity provision, GreenTech entered into its own agreement with JAC in 2014 under which it would distribute JAC's vehicles in the United States.  *See* UC Dkt. 176-22.  Plastech sued GreenTech for tortious interference with contract.  UC Dkt. 113, ¶¶ 139-160. Plastech also sued JAC for breach of contract.  *Id.* ¶¶ 80-94.  JAC and GreenTech both defended on the theory that JAC never signed the Framework Agreement.

### B. Plastech Mistakenly Attaches an Inauthentic Copy of the Framework Agreement to its Filings in the Underlying Case.

Plastech mistakenly attached an inauthentic version of the Framework Agreement to its First and Second Amended Complaints in the Underlying Case.

---

[2] For purposes of this brief, "UC Dkt." refers to the docket in the Underlying Case (No. 2:14-cv-14049).  "CA6 Dkt." refers to the Sixth Circuit's docket in the appeal of the Underlying Case (No. 17-2122).  "Dkt." refers to the docket in this case.

After Plastech discovered that the copy of the contract it had filed was not authentic, it voluntarily disclosed the issue to GreenTech and JAC (UC Dkt. 208, at 35-36), and filed a Third Amended Complaint that removed the document (UC Dkt. 194-5, at 8-9). When it submitted the inauthentic contract, Plastech mistakenly believed that the signature page of that contract was among the documents that Plastech's CEO had brought back to the United States in 2011 after meeting with JAC in China. *See* UC Dkt. 195, at 1, 18-19; UC Dkt. 208, at 36-37, 54. In fact, this particular version of the contract was created by Kerrie Mitchell, one of Plastech's employees. As Plastech has previously explained to this Court, the Framework Agreement containing an exclusivity provision <u>was</u> actually signed, but Plastech does not currently have an authentic copy of that agreement in its possession because JAC took the originals of the contract back to China. UC Dkt. 113, ¶ 29.

### C. GreenTech's Counterclaim in the Underlying Case.

GreenTech filed its Answer to Plastech's Third Amended Complaint in October 2016. UC Dkt. 116. In January 2017, GreenTech sought leave from this Court to file a counterclaim alleging that Plastech had tortiously interfered with its relationship with JAC (the "Counterclaim"). *See* UC Dkt. 166 (motion); UC Dkt. 166-15 (proposed counterclaim). GreenTech's theory of tortious interference was that Plastech had forged the Framework Agreement and fraudulently contended that it had an exclusive relationship with JAC, thereby causing GreenTech to terminate

3

its business relationship with JAC. *See* UC Dkt. 166, at 8-9 (claiming that Plastech "built its entire case on a contract that does not exist"); *see also id.* at 9, 10, 20-21 (similar). GreenTech represented to this Court nearly a dozen times that the conduct giving rise to its Counterclaim constituted "fraud" by Plastech—five times in its briefs,[3] twice in the text of its proposed Counterclaim,[4] and four more times at a hearing on GreenTech's motion.[5]

After briefing and oral argument, this Court denied GreenTech's motion for leave to file its Counterclaim on the ground that GreenTech had engaged in undue delay before seeking leave to file. UC Dkt. 212, at 4; *see* Fed. R. Civ. P. 13(e), 15. At the time GreenTech filed its Counterclaim, dispositive motions had already been filed. UC Dkt. 212, at 4; UC Dkt. 205, at 16-17. Moreover, discovery had long since closed, and GreenTech had not designated any expert witnesses. UC Dkt. 205, at 17-18, 25.

In explaining its ruling that GreenTech had waited too long to file its Counterclaim, this Court emphasized that GreenTech was aware as early as August

---

[3] UC Dkt. 166, at 12 (claiming that Plastech engaged in "criminal action and egregious fraud upon this Court"); *id.* at 21 (claiming that Plastech committed an "egregious fraud"); *id.* (faulting Plastech for not "disclosing the fraud"); UC Dkt. 197, at 5 (noting that Plastech "had presented and relied [on] fraudulent documents"); *id.* at 8 (again characterizing Plastech's actions as a "fraud").

[4] UC Dkt. 166-15, ¶¶ 34, 35.

[5] UC Dkt. 205, at 20 (claiming that Plastech "know[s] that they used [a] fraudulent contract to interfere with GreenTech and JAC's relationship"); *see id.* at 22 (discussing Plastech's purported "fraud"); *id.* at 23 (same); *id.* at 24 (same).

2014 that JAC denied the existence of any exclusive agreement with Plastech.  UC Dkt. 212, at 5.  This Court also stated that GreenTech was "undoubtedly aware" as of March 2015 that JAC believed the Framework Agreement on which Plastech was relying was "not the operative agreement," was "unenforceable," was "not the version [of the Agreement] that JAC Motors signed," and contained terms "that were not in JAC Motors' version of the Agreement."  *Id.* at 5-6.  Moreover, this Court expressly rejected GreenTech's argument that its delay should be excused because it lacked "definitive" proof of the inauthenticity of the Framework Agreement until the November 2016 deposition of Kerrie Mitchell.  *Id.* at 6.  In so holding, this Court noted that documentary proof of the contract's inauthenticity was provided by "documents produced . . . during discovery," including emails that "demonstrate the back-and-forth exchange between [Plastech] employees in creating the forgery."  *Id.* at 7.  Those emails were produced in January of 2016.  *See, e.g.*, UC Dkt. 204, at 18-19; UC Dkt. 204, at 19-20.[6]

This Court's order denying GreenTech leave to file its Counterclaim merged into the final judgment in the Underlying Case when it was issued in August 2017.

---

[6] In its Answering Brief filed in the Sixth Circuit appeal of the Underlying Case, GreenTech stated that it discovered the Framework Agreement's inauthenticity "upon receipt" of these documents in January 2016. CA6 Dkt. 22, at 16.  The Counterclaim was not filed until one year later.

5

UC Dkt. 224.  GreenTech did not file a motion to reconsider the denial of leave to file its Counterclaim, and it did not appeal that decision to the Sixth Circuit.

### D. GreenTech Seeks and Obtains Sanctions in the Underlying Case.

During proceedings in the Underlying Case, both JAC and GreenTech sought sanctions against Plastech based on the inauthentic Framework Agreement.  UC Dkts. 163, 165.  In its motion for sanctions, GreenTech asked that this Court dismiss Plastech's complaint (UC Dkt. 165 at 22), award attorney's fees (*id.*), and "set an evidentiary hearing . . . to adjudicate the appropriateness and amount of monetary sanctions" (*id.* at 6).  During the hearing on that motion, counsel for GreenTech again implied that both "monetary sanctions" and "nonmonetary sanctions" might be appropriate.  UC Dkt. 205, at 21.

In June 2017, this Court entered an order dismissing all of Plastech's claims in the Underlying Case based on a finding that Plastech had acted in bad faith and had perpetrated a fraud.  UC Dkt. 213 ("Sanctions Order"), at 16-19.  This Court did not award attorney's fees or impose any other sanctions against Plastech.  GreenTech subsequently filed a motion asking this Court to reconsider its decision not to award attorney's fees.  UC Dkt. 225.  That motion remains pending before this Court.

Plastech timely appealed the Sanctions Order (UC Dkt. 227), contending among other things that although Plastech had erred in attaching the contract, there was no clear and convincing evidence that Plastech had acted in bad faith as opposed

to having made a highly regrettable, but unintentional, mistake. Plastech filed its Opening Brief in the Sixth Circuit on December 15, 2017 (CA6 Dkt. 19), and GreenTech filed its Answering Brief on February 15, 2018 (CA6 Dkt. 22).

### E.  GreenTech Files A New Lawsuit Based on the Underlying Case.

GreenTech filed its Complaint in this case in November 2017, naming both Plastech and its former counsel Susman Godfrey as defendants. Dkt. 1 ("Complaint" or "Compl."). The new Complaint contends that Plastech committed various torts in connection with the Underlying Case, all of which sound in fraud—fraudulent misrepresentation, silent fraud, negligent misrepresentation, abuse of process, civil conspiracy, and concert of action. *Id.* ¶¶ 40-90. All of these claims are premised on the allegation that the Framework Agreement attached to Plastech's filings in the Underlying Case was inauthentic. *See, e.g.*, *id.* ¶ 21 (claiming that Plastech "fabricated and forged an agreement" and that "there was no 'exclusive agreement' between [Plastech] and JAC"). GreenTech's Complaint, like its previous Counterclaim, repeatedly alleges that Plastech's purported fraudulent conduct led to the loss of GreenTech's business relationship with JAC. *See, e.g.*, *id.* ¶¶ 53, 61, 95.

### <u>SUMMARY OF ARGUMENT</u>

GreenTech's claims against Plastech in this case are barred as a matter of law.

<u>First</u>, GreenTech's claims are precluded by the rule against claim-splitting. That rule provides that when a party brings a claim in one action, it is obligated to

7

bring <u>all</u> of its claims that are related to that that claim in the <u>same</u> action.  Under principles of res judicata, a party's failure to raise these other claims in the first case bars the party from raising them in a separate action, including where the party was a counterclaimant in the first action.  The rule against claim-splitting, which has been vigorously enforced by the Sixth Circuit and Michigan courts, is intended to promote judicial economy by allowing the court to resolve all related claims in one case.

During proceedings in the Underlying Case, GreenTech sought leave to file a Counterclaim alleging that Plastech's "fraudulent" use of the Framework Agreement constituted tortious interference in the business relationship between JAC and GreenTech.  Once it elected to submit that Counterclaim, GreenTech was obligated to bring all other claims it might have related to Plastech's purported fraud.  Instead of complying with that obligation, GreenTech instead opted to file this second lawsuit and allege its fraud claims there.  This is a textbook example of claim-splitting.  Thus, all of GreenTech's claims in this case are precluded, and the Complaint must be dismissed.

<u>Second</u>, GreenTech's claims against Plastech in this case are barred because any remedy for GreenTech's current claims would constitute an impermissible "double recovery" for conduct that this Court already sanctioned in the Underlying Case.  Under the principles of merger and election of remedies, no party may recover twice for the same wrongful conduct.  GreenTech sought money damages as a

sanction for Plastech's purported fraud in the Underlying Case, and ultimately received an extremely favorable remedy in the form of dismissal of Plastech's claims. Having already sought money damages for Plastech's alleged "fraud" once, GreenTech cannot pursue that same remedy in this second lawsuit. Moreover, GreenTech cannot pursue damages here given that it has already received a favorable recovery on the basis of the exact conduct challenged in its new Complaint.

Finally, in the event this Court does not grant Plastech's motion to dismiss, it should stay proceedings in this case pending resolution of the ongoing appeal of the Sanctions Order. A stay is warranted when, as here, the outcome of a pending appeal may have a significant effect on issues not yet litigated in a related case.

## ARGUMENT AND AUTHORITIES

### I.    All of GreenTech's Claims Against Plastech in This Case Are Barred By the Rule Against Claim-Splitting.

It is hornbook law that a litigant "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004); *see generally Restatement (Second) of Judgments* §§ 18, 19, 24, 25 (1982). "Attempts to split a claim into separate causes of action have often met with disfavor" in Michigan because "[t]he law abhors [a] multiplicity of suits." *A. Krolik & Co. v. Ossowski*, 213 Mich. 1, 7,

180 N.W. 499, 501 (1920).[7]  Indeed, Michigan has adopted a "broad" interpretation of res judicata and generally embraces the res judicata and claim-splitting rules stated in the *Restatement (Second) of Judgments*.  *See, e.g.*, *Gose v. Monroe Auto Equip. Co.*, 409 Mich. 147, 160, 163, 294 N.W.2d 165, 167, 169 (1980).[8]  Michigan courts, like their federal counterparts, recognize that "res judicata bars litigation in the second action not only of those claims actually litigated in the first action, but claims arising out of the same transaction which the parties, <u>exercising reasonable diligence</u>, could have raised but did not."  *State Farm Fire & Cas. Co. v. Schotts*, No. 208145, 1999 WL 33329399, at *2 (Mich. Ct. App. Dec. 3, 1999) (emphasis added) (internal quotation marks omitted).[9]

As the Sixth Circuit has explained, the rule against "claim-splitting" is motivated by finality concerns, a desire to conserve scarce judicial resources, and the principle that a party defending a lawsuit or a counterclaim should not have to

---

[7] In a case in which a federal court sits in diversity to adjudicate the preclusive effect of a prior federal judgment also predicated on diversity jurisdiction, the federal court follows its own procedural rules but looks to the substantive law of preclusion of the state in which the first federal court sat (*i.e.*, Michigan).  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001).  As discussed herein, Michigan and federal law on res judicata are materially identical for purposes of this motion.

[8] *See also Rowry v. Univ. of Mich.*, 441 Mich. 1, 21 n.5, 490 N.W.2d 305, 313 n.5 (1992) (Riley, J., concurring); *Rauch v. Sinai Hosp.*, No. 218576, 2001 WL 684566, at *3 (Mich. Ct. App. June 15, 2001) (per curiam) (noting that the "*Restatement*'s position in this regard [is] consistent with our Supreme Court's broad approach to claim preclusion"); *Engle v. Livonia Firefighters Union, Local 1164*, No. 244334, 2004 WL 817150, at *1 (Mich. Ct. App. Apr. 15, 2004) (per curiam) (similar).

[9] Unpublished cases are attached as Exhibit 1.

10

answer the same allegations twice.  *See Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).  Indeed, "bringing two different suits which present two different theories of the case arising from the same factual situation" is "the precise behavior the doctrine [of] res judicata seeks to discourage." *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999); *see id.* (noting that claim-splitting is a "type of duplicity [that] should be avoided at all costs").  Accordingly, courts enforce the prohibition on claim-splitting by dismissing any second action that should have been brought as part of the first action.  *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 133.51 (3d ed. 2017) (remedy for claim-splitting is preclusion); *see also Prewett v. Weems*, 749 F.3d 454, 462 (6th Cir. 2014); *Hutcherson v. Lauderdale Cty.*, 326 F.3d 747, 759 (6th Cir. 2003).

That rule decides this case.  During litigation in the Underlying Case, GreenTech sought leave to file a Counterclaim alleging that Plastech had tortiously interfered with its contract with JAC.  *See* UC Dkt. 166.  Having opted to file one Counterclaim against Plastech, GreenTech assumed an obligation to bring <u>all</u> of its potential claims against Plastech as counterclaims to the extent that those other potential claims sprung from the same "central set of facts" as did its tortious interference Counterclaim.  *Wilkins*, 183 F.3d at 535; *see Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich. 412, 420, 733 N.W.2d 755, 760 (2007) (noting that "the assertion of different kinds or theories of relief still constitutes a single cause of

action if a <u>single group of operative facts</u> give rise to the assertion of relief"
(emphasis added) (quotation marks omitted)); *see also Schwartz v. City of Flint*, 187
Mich. App. 191, 194-95, 466 N.W.2d 357, 360 (1991) (noting that the "test for
determining whether two claims arise out of the same transaction and are identical
for res judicata purposes is whether the same facts or evidence is essential to the
maintenance of the two actions").  As Judge Easterbrook recently explained on
behalf of a unanimous Seventh Circuit panel, a defendant who has "elected to take
the offensive" by "assert[ing] . . . counterclaims" thereby becomes "obliged to raise
<u>all claims</u> that stem from the same transaction or series of related transactions (what
courts sometimes call the 'core of operative facts')."  *Nalco Co. v. Chen*, 843 F.3d
670, 674 (7th Cir. 2016) (emphasis added).[10]

For three reasons, it is clear that GreenTech's claims here stem from the same
"central set of facts" or "group of operative facts" that motivated its Counterclaim.

<u>First</u>, GreenTech's Counterclaim and Complaint are both premised on
Plastech's creation and use of the inauthentic version of the Framework Agreement.
GreenTech's Counterclaim repeatedly stated that its allegation of tortious
interference rested on the fact that the Framework Agreement was inauthentic.  *See*

---

[10] *Accord VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL
1163741, at *5-8 (N.D. Ill. Mar. 29, 2017) (plaintiffs' claims barred because their
counterclaims in a prior suit were based on same facts); *Perry v. Alexander*, No.
2:15-CV-00310, 2017 WL 3084387, at *4 (D. Me. July 19, 2017) (similar rule).

*supra* pp. 3-5; *see also* UC Dkt. 166-15, at 8-10.  So too with the instant Complaint, which is likewise premised on allegations that the Framework Agreement is inauthentic.  *See supra* p. 7; *see also* Compl. ¶¶ 21, 56, 68.

Second, GreenTech repeatedly stated during proceedings in the Underlying Case that the conduct giving rise to its tortious interference Counterclaim constituted "fraud," the very claim that figures prominently in the Complaint.  *See supra* pp. 3-4 & notes 3-5.  The fact that GreenTech used the word "fraud" when describing the facts giving rise to its tortious interference counterclaim confirms that the fraud claims here arise out of the same "central set of facts" as did the Counterclaim.

Third, the Complaint repeatedly references GreenTech's loss of the business relationship it had with JAC.  *See supra* p. 7; *see also* Compl. ¶¶ 53, 61, 95.  Indeed, GreenTech's claims in this case read exactly like a pleading for tortious interference with contract.  *See, e.g.*, Compl. ¶ 95 ("The Defendants intentionally interfered with the business relationship between Plaintiff and JAC.").  It is clear that GreenTech, having engaged in undue delay before seeking to press its claims under the banner of tortious interference in the Underlying Case, now seeks to press those exact same claims under the new banner of fraud in this case.

It is no answer for GreenTech to claim that the rule against claim-splitting does not apply here because the claims it brings in this action (abuse of process, fraudulent misrepresentation, silent fraud, and negligent misrepresentation) have

different names and somewhat different elements than the claim it alleged in its proposed Counterclaim (tortious interference with contract). As noted above, "bringing two different suits which present two different theories of the case arising from the same factual situation" is "the precise behavior the doctrine res judicata seeks to discourage." *Wilkins*, 183 F.3d at 535 (emphasis added); *see Washington*, 478 Mich. at 420, 733 N.W.2d at 760. The applicability of the claim-splitting doctrine does <u>not</u> depend on whether the claims alleged in the second suit are technically identical to the claims alleged in the first suit (or in a counterclaim within the first suit). *See* 50 C.J.S. *Judgments* § 1000, Westlaw (database updated Feb. 2018); *accord Restatement (Second) of Judgments* § 25.[11] Instead, all that matters is that the claims arise from "the same factual situation" as the counterclaim, which these claims indisputably do. *Wilkins*, 183 F.3d at 535; *see Washington*, 478 Mich. at 420, 733 N.W.2d at 760.

Indeed, GreenTech's claims in this case arise not only from the same factual

---

[11] In any event, the fact that the damages GreenTech claimed in connection with its Counterclaim closely align with the damages claimed in this case only serves to confirm the fact that GreenTech's Counterclaim arose out of the same "central set of facts" as did its claims in this case. *Compare* UC Dkt. 166, at 20-21 (suggesting that GreenTech's damages in connection with Plastech's alleged tortious interference were [1] "[e]conomic damages including . . . [2] destruction of business relationships, and [3] damage to GreenTechs' business reputation"), *with* Compl. ¶¶ 47, 77, 96 (suggesting that GreenTech's damages in connection with the torts alleged in this case were [1] "economic losses" including the [2] "termination of [] business relationship[s]" and [3] injury to GreenTech's "professional reputation and status").

situation as the Counterclaim, but also from the same basic facts as Plastech's underlined complaint. As such, they are barred not just by the rule against claim-splitting, but also because they were compulsory counterclaims in the Underlying Case—*i.e.*, they were claims that GreenTech was obligated to (timely) assert in the Underlying Case, and thus they must be dismissed in this action. *See Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 276-77 (6th Cir. 1991).

Specifically, under Federal Rule of Civil Procedure 13, a "pleading must state as a counterclaim any claim" that (1) "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," (2) is mature "at the time of [the] service" of the pleading, (3) "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a) (emphasis added). All of these requirements are satisfied here. First, the Underlying Case and the new Complaint both arise out of the exclusive Framework Agreement between Plastech and JAC, *compare* UC Dkt. 113, ¶¶ 29-31, 139-160, *with* Compl. ¶¶ 15, 21, 26, 41, 49, 56, 68. [12] Second, in denying leave to file the Counterclaim, this Court expressly held that any potential challenges by GreenTech to Plastech's "fraudulent" behavior were mature well before the time that GreenTech served its last responsive pleading

---

[12] GreenTech has repeatedly characterized Plastech's claims in the Underlying Case as being "fraud-based." CA6 Dkt. 22, at 14; *see also id.* at 11, 16, 17, 20, 31. This confirms that GreenTech's new claims in this case (which all sound in fraud) spring from the same central set of facts that was at issue in the Underlying Case.

in the Underlying Case.  *See supra* pp. 4-5 & note 6.   And third, adding Susman

Godfrey as a counterclaim defendant would not have destroyed diversity

jurisdiction, as is evidenced by the fact that this Court has competent jurisdiction

over the instant case.

Finally, it is of no moment that this Court denied GreenTech's motion for

leave to file its Counterclaim.  What matters is not whether leave was denied or

granted, but rather the facts that (1) GreenTech elected to pursue its claims in the

form of a Counterclaim in the Underlying Case and (2) that this Court's order

denying leave to file that Counterclaim is a final judgment.[13]  Indeed, federal courts

have often dismissed second-in-time lawsuits on the ground that they violate the rule

---

[13] In *Wilkins*, a leading claim splitting case from the Sixth Circuit, the Court held that the first action did not have preclusive effect in the second action because no "final judgment" had been issued in the first action.  183 F.3d at 534-35.  In that case, the first action had been dismissed as to some defendants on <u>jurisdictional</u> grounds, and this dismissal was therefore not a final decision on the merits.  *Id.* at 534.  In this case, the dismissal of GreenTech's Counterclaim in the Underlying Case was a final decision on the merits.  That ruling was not jurisdictional.

In any event, a final judgment on the merits is <u>not</u> a requirement for application of the claim-splitting doctrine, even if it may be a requirement for application of more general principles of claim preclusion.  *See Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) ("While it is correct that a final judgment is necessary for traditional claim preclusion analysis, it is not required for the purposes of claim splitting.  The doctrine of claim preclusion, or res judicata, requires as one element a valid, final judgment on the merits.  While we analyze claim splitting as an aspect of res judicata, the claim-splitting doctrine does not fall within a conventional res judicata analysis." (internal citations omitted)); *see also* 4 *Cyclopedia of Federal Procedure* § 14:196, Westlaw (3d ed. database updated Feb. 2018) ("A final judgment in the other case is not a prerequisite to the bar against claim splitting in contrast with the bar against claim preclusion.").

against claim-splitting even when the original claim was stated within a counterclaim or amended pleading that the defendant was denied leave to file. *See Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057-65 (S.D. Cal. 2007). *Finjan, Inc. v. Blue Coat Systems, LLC* is particularly instructive. 230 F. Supp. 3d 1097, 1103 (N.D. Cal. 2017). The same result is called for here.

*     *     *     *     *

GreenTech represented to this Court during litigation in the Underlying Case that Plastech's "use of the forged agreement [was] clearly actionable" in the form of a counterclaim. UC Dkt. 197, at 3. GreenTech chose to challenge Plastech's "actionable" misconduct by filing a Counterclaim for tortious interference. But, as is evidenced by the fact that GreenTech repeatedly used the word "fraud" when describing the facts giving rise to its tortious interference claim, it is clear that the same misconduct GreenTech challenged in the form of tortious interference could also have been challenged under the guise of either abuse of process or fraud. Because GreenTech failed to bring claims via those theories in the Underlying Case, it should not now permitted to raise them here in a separate proceeding.

## II.    GreenTech's Claims Are Also Barred Because GreenTech Sought and Received Sanctions for Plastech's "Fraud" in the Underlying Case.

Wholly apart from the fatal claim-splitting defect, GreenTech's claims should also be dismissed because this Court already addressed the sanctions it should

17

impose against Plastech in the Underlying Action.  *See* UC Dkt. 213.  GreenTech is not entitled to a second bite at the apple that would amount to a double recovery.

During proceedings in the Underlying Case, GreenTech filed a motion seeking money damages against Plastech based on the inauthentic Framework Agreement.  *See supra* p. 6; *see also* UC Dkt. 165 at 6, 22; UC Dkt. 205, 21.  This Court ultimately dismissed Plastech's complaint as a sanction for its purported misconduct, but it did not award monetary sanctions.  *See* UC Dkt. 213, at 16-19.

In this case, GreenTech seeks "damages consistent with the losses suffered" as a result of Plastech's purported fraud (*e.g.*, Compl. pp. 11, 12, 13), plus other damages "sufficient to compensate Plaintiff for its actual, consequential, and incidental losses sustained as a result of Defendant's wrongful actions" in connection with the inauthentic version of the Framework Agreement (*id.* p. 16).

"The law does not sanction double recoveries." *Westerman v. Sears, Roebuck & Co.*, 577 F.2d 873, 879 (5th Cir. 1978); *see Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 796 n.2 (6th Cir. 2003) (noting that a party cannot "require a double recovery for the same injury, even where alternative theories of recovery—such as breach of contract and breach of warranty—are available").  Indeed, several different legal doctrines—such as merger and election of remedies—were designed to ensure that a party cannot recover twice for the same underlying wrong.  *See* 28A C.J.S. *Election of Remedies* § 9, Westlaw (database updated Feb. 2018).  These

doctrines are built on the principle that "a plaintiff may be estopped from pursuing additional remedies once a plaintiff has made a choice to pursue a specific remedy in another forum or lawsuit," and they are intended "to prevent vexatious litigation and harassment of defendant by dual or multiple actions for causes arising out of the same subject matter." *Id.* § 1 (footnote omitted).

GreenTech's claims in this case must be dismissed because they are an improper attempt to secure a double recovery for the same underlying wrong that was at issue in the Underlying Case. GreenTech already sought monetary damages based on Plastech's purported fraud via its Sanctions Motion. After full briefing on the Sanctions Motion, this Court held that the appropriate remedy was to dismiss Plastech's case but not to award any other damages. Because GreenTech already sought money damages for Plastech's purported fraud, it cannot seek those same damages again in this separate action. And because GreenTech already received a generous remedy for Plastech's purported fraud in the form of the dismissal of Plastech's claims, it cannot now receive a second remedy in the form of money damages on the basis of that same conduct. *See id.*

GreenTech itself admitted during proceedings in the Underlying Case that judicial economy counseled in favor of resolving its requests for sanctions as a part of that case rather than in a separate action. After this Court dismissed Plastech's claims in the Underlying Case (UC Dkt. 213), GreenTech indicated as part of the

19

"Joint Memorandum Regarding Further Proceedings" that it "will need to seek redress for [the] damages" it suffered as a result of a "forgery that [Plastech did] intentionally" (UC Dkt. 217, at 4). GreenTech claimed in that memorandum that "[r]edress is available through this action [*i.e.*, the Underlying Case], or through filing a new action. <u>Judicial economy would suggest that this Court is best situated to adjudicate the attorney fee issues</u>." *Id.* (emphasis added). In short, GreenTech conceded that judicial economy would be served by resolving all issues related to potential sanctions in the Underlying Case rather than in a new case. But because GreenTech did not feel that this Court's Sanctions Order went far enough, it filed a separate action anyway in hopes of winning a second bite at the apple. This Court should not entertain GreenTech's relitigation of the sanctions issue through this second lawsuit, especially given GreenTech's own admission that such relitigation is at odds with legitimate concerns relating to "judicial economy."

**III.    <u>In the Alternative, This Court Should Stay This Case Pending the Resolution of the Appeal in the Underlying Case.</u>**

If this Court does not dismiss the action against Plastech outright, it should stay it pending the resolution of Plastech's appeal of the Sanctions Order to the Sixth Circuit.[14] The Opening Brief and Answering Brief in that appeal have already been

---

[14] Given that the appeal of the Underlying Case is ongoing, this Court has entered an Order suspending GreenTech's obligation to respond to Susman Godfrey's motion to dismiss pending a status conference to be held on February 22. Dkt. 11.

filed, and the Reply brief is due early next month.  In the appeal of the Underlying Case, the Sixth Circuit may deliver certain holdings that could have a significant impact on this case.  For example, the Sixth Circuit could determine that Plastech's submission of the inauthentic Framework Agreement was an honest mistake and did not involve any intentional or willful misconduct.  That determination would negate elements of some of GreenTech's fraud claims in this case.  Moreover, the Sixth Circuit could reverse the Sanctions Order and remand the matter back to this Court for further discovery concerning the Framework Agreement.  Additional proceedings on remand might result in rulings in the Underlying Case that could be dispositive as to some of GreenTech's claims in this matter.

Given these circumstances, it would be appropriate for this Court to stay this action until the Sixth Circuit has had a chance to rule.  This Court has authority to enter such a stay.  *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." (quotation marks omitted)).  And such stays are routinely granted when related cases are pending.  *See, e.g.*, *Bd. of Trs. of Sheet Metal Workers' Local Union No. 80 Ins. Tr. Fund v. Blue Cross & Blue Shield of Michigan*, No. 2:13-CV-10415, 2013 WL 4052740, at *1 (E.D. Mich. Aug. 12, 2013); *Williams v. Rapelje*, No. 10-10246, 2010 WL 455395, at *2 (E.D. Mich. Feb.

3, 2010).  As such, if this Court does not dismiss GreenTech's claims outright, it should stay proceedings in this case pending final resolution of the Underlying Case.

Plastech's motion to stay this case is made subject to and without waiver of its motion to dismiss GreenTech's claims.

## CONCLUSION

Plastech respectfully requests that the Court dismiss all of GreenTech's claims against it.  In the alternative, Plastech respectfully moves to stay this case pending the Sixth Circuit's resolution of the appeal in the Underlying Case.

Filed:  February 20, 2018

*/s/ Brian M. Schwartz*
Brian M. Schwartz

Brian M. Schwartz (P69018)
MILLER, CANFIELD, PADDOCK
    AND STONE, PLC
150 W. Jefferson Ave., #2500
Detroit, MI 48226
313-963-6420
schwartzb@millercanfield.com

Respectfully submitted,

*/s/ Matthew S. Hellman*
Matthew S. Hellman

Matthew S. Hellman (DC 484132)
JENNER & BLOCK LLP
1099 New York Ave., NW
Washington, DC 20001
202-639-6000
mhellman@jenner.com

*Counsel for Defendant
Plastech Holding Corp. Only*

# <u>LOCAL RULE CERTIFICATION</u>

I, Matthew S. Hellman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials, footnotes, and headings); at least one-inch margins on the top, sides and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ *Matthew S. Hellman*_____

MATTHEW S. HELLMAN

Attorney for Plastech Holding Corp.

Dated:  February 20, 2018

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a), attorney Matthew S. Hellman emailed GreenTech's counsel on February 13, 2018 to explain the nature of the relief sought here and to try to obtain concurrence in the motion.  GreenTech did not concur and indicated that it opposes the relief sought in this motion opposes this motion.


/s/ *Matthew S. Hellman*
MATTHEW S. HELLMAN

Attorney for Plastech Holding Corp.

Dated:  February 20, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew S. Hellman, certify that pursuant to Local Rule 5.1.1, this document was served on all attorneys of record via the Court's ECF System on February 20, 2018.

/s/ *Matthew S. Hellman*_____
MATTHEW S. HELLMAN

Attorney for Plastech Holding Corp.

Dated:   February 20, 2018